**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0966n.06
Filed: December 14, 2005

No. 04-5986

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | | |
|---|---|---|---|
| JAMES R. EDGAR, | ) | | |
| | ) | | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE | |
| | ) | UNITED STATES DISTRICT | |
| v. | ) | COURT FOR THE WESTERN | |
| | ) | DISTRICT OF TENNESSEE | |
| CITY OF COLLIERVILLE ET AL., | ) | | |
| | ) | **O P I N I O N** | |
| **Defendants-Appellees.** | ) | | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | | |

**Before: MOORE and SUTTON, Circuit Judges, and BUNNING,**[*] **District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant James Russell Edgar ("Edgar") appeals from the district court's grant of summary judgment to the defendants in a case raising a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. Edgar, a firefighter, claims that he was unconstitutionally denied a promotion because he helped to form a local firefighters union. The defendants respond that there was no connection between Edgar's union activity and the promotional process. We **AFFIRM** the district court's judgment in favor of the defendants.

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I. BACKGROUND

James Russell Edgar was hired by the Collierville Fire Department in 1995. In July 1998, Edgar and Robin "Spence" Jackson submitted the paperwork to form the Collierville Firefighters Union, Local 3864, which is an affiliate of the International Association of Firefighters.[1] Jackson served as the interim president and Edgar served as the interim secretary until elections were held at the union's first meeting. Prior to the formation of the union, the chief of the fire department, Dennis Rutledge ("Rutledge"), expressed concern about unionization at other counties' fire departments and about the possibility of a union forming in Collierville. After the Collierville union was created, Chief Rutledge told Jackson and Edgar that he was going to lose his job as chief as a result of the unionization. Bo Rutledge, a fire department lieutenant and the brother of Chief Rutledge, told Edgar that he was "'making a big mistake'" with regard to his union activities. Joint Appendix ("J.A.") at 197 (Edgar Aff.).

In January 2000, the Collierville Fire Department announced that it would conduct a promotional process to fill officer vacancies. Edgar argues that he was treated differently than other candidates during his bid for promotion as retaliation for his work on the union. The department adopted a rule penalizing firefighters for using their sick leave, which impacted Edgar's score in the promotional rankings due to a prolonged absence he took after he was involved in an automobile accident. During the promotional process, Edgar was required to take a driving test that was not required of other candidates, and during equipment testing, the test administrator would not repeat

---

[1]We note that "[i]n reviewing the district court's decision to grant summary judgment, we view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001), *cert. denied*, 537 U.S. 813 (2002). Accordingly, we present the background information from Edgar's perspective, and we make no determinations regarding these assertions.

instructions for Edgar that were apparently repeated for at least one other candidate during the same test. Edgar was surprised to find that he scored poorly on the written portion of the test, as he had been successful in his state training course; the test administrator claimed to have sent the tests to an outside source for scoring, but some of the firefighters observed this administrator disposing of the answer sheets.

The fire department obtained approval to build a new station at the end of 2000, which created a need for six additional fire drivers/engineers. Edgar was one of nine firefighters who applied for a driver position. The first part of the promotional process was a written exam, and Edgar tied with three other applicants for the lowest score on this exam. The next part of the process was an oral interview designed to establish each applicant's credentials and skills; Edgar scored a 3.89 on his interview, which placed him sixth out of the nine candidates. At the end of the process, Edgar was ranked ninth out of the nine candidates. As the top six candidates were chosen to be drivers, Edgar was not promoted.

Edgar claims that there were irregularities with this promotional process, just as with the 2000 process. One of the requirements for the driver position was pumper driver/operator qualification by the time of the promotion, but some of the firefighters that were promoted never took the state pumper-training course. Assistant Chief Arwood ("Arwood") (who was in charge of the promotional process) refused to give Edgar credit for certain college courses that Edgar completed because Edgar did not bring proof of the credit as explicitly required. Edgar also asked for credit for an urban search and rescue course that he had taken through the fire department, and for which he had not yet received his certificate of completion. Arwood denied Edgar this credit, even though he gave credit to other candidates for the same course.

3

In October 2002, Edgar sued the City of Collierville, Dennis Rutledge (chief of the fire department), Richard Arwood (assistant chief of the fire department), and Mark King (logistics administrator of the fire department) in U.S. district court in Memphis, Tennessee. The complaint sought damages under 42 U.S.C. §1983 for First Amendment violations and under state law for intentional infliction of emotional distress and civil conspiracy. The defendants filed a motion to dismiss Edgar's § 1983 claims regarding the 2000 promotion as time-barred, and the district court dismissed the claims. The defendants filed a motion for summary judgment as to the § 1983 claim, which the district court granted. The district court also declined to exercise supplemental jurisdiction over the state law claims. Edgar filed a motion to reconsider, with several pieces of new evidence attached. The district court denied the motion, and Edgar filed a timely notice of appeal with this court.

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's order granting summary judgment to the defendants. *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999). "The party seeking summary judgment has the initial burden of showing that there is no genuine issue as to any material fact, and we will reverse a grant of summary judgment if the nonmoving party has presented evidence of specific facts, which, viewed in the most favorable light, indicates that there is a genuine issue for trial." *Id*.

### B. Discussion

To establish the prima facie elements of a First Amendment retaliation claim, a public employee must show that: "(1) [he] engaged in constitutionally protected speech; (2) [he] was subjected to adverse action or was deprived of some benefit, and (3) the protected speech was a

'substantial' or a 'motivating factor' in the adverse action." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff satisfies these requirements, "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003).

The district court held that Edgar failed to demonstrate that his union activity was a "substantial" or "motivating factor" in the decision in 2001 not to promote him, and we agree with this conclusion.[2] J.A. at 349 (Order Granting Defs.'s Mot. for Summ. J.). Assistant Chief Arwood, who was in charge of the 2001 promotional process, was not aware of Edgar's earlier union activities.[3] This lack of knowledge is fatal to Edgar's claim, because "the defendant must have known about the protected activity in order for it to have motivated the adverse action." *Thaddeus-X*, 175 F.3d at 387 n.3; *see also Thompson v. Scheid*, 977 F.2d 1017, 1021 (6th Cir. 1992) ("Even if plaintiff's contact with the FBI could be considered speaking out as a citizen, he cannot claim that he was retaliated against for contacting the FBI because the defendants did not learn of this contact until after he had resigned."), *cert. denied*, 508 U.S. 910 (1993); *Van Huss v. Shoffner*, 81 F. App'x 17, 23 (6th Cir. 2003) ("[K]nowledge is a logical prerequisite to finding that plaintiffs' termination was substantially motivated by their engagement in constitutionally protected activity. After all, a

---

[2]Because we find that Edgar does not satisfy the third element of the prima facie test for retaliation, we need not address the first two elements.

[3]Arwood also pointed out that he himself was a member of the firefighters' union while he was working for the City of Memphis.

defendant cannot terminate employees due to the exercise of their First Amendment rights in the absence of knowledge that they were doing any such thing.").

As the district court properly granted summary judgment to the defendants, it is unnecessary to address the issue of qualified immunity raised by Edgar with regard to Defendants Rutledge and Arwood. We also note that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Edgar's state-law claims because it dismissed all of his federal claims. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment in favor of the defendants with regard to Edgar's § 1983 claim.